May it please the court, your honor. I don't know if you prefer me to stand here or here. Thank you. May it please the court, counsel. This matter has been abundantly briefed. I will try to follow a quick outline and I'll be prepared to answer any questions. There's a lot in the briefs. We raise a variety of issues. In regards to the Traverse motion, we believe it was error. We believe the court treated the Traverse motion as a 619 motion. It did not allow any testimony. It did not allow any discovery. This court previously, earlier this year in a case out of Will County that I was involved in, the court acknowledged that there probably should be a right to, the court recognized the right for discovery in a Traverse motion. But for other reasons indicated in that particular case, discovery hadn't been requested. We certainly requested it in this case. The court's comment at the time, I believe, was something to the effect that I don't usually allow discovery in motions to dismiss. I think that's where the court got it wrong. The Traverse motion is contesting the right to condemn the property to begin with. We had to have discovery on that. Were there any requests for discovery? Yes. The trial court denied discovery, said that she did not allow discovery in motions to dismiss. Yes. Were there rulings on the trial court on specific motions for discovery that were ruled on by the trial court? I believe so, yes. I believe it's in the record, Your Honor. Do you remember? What's that? Do you specifically remember any motions that were specifically? Well, I specifically recall talking to the judge and saying, we'd like discovery on this issue, and the response was, I'm not inclined to give any discovery. I'm not talking about that. I'm talking about, was there ever a specific motion for a specific discovery that, and then a ruling from the trial judge on that specific motion denying? A separate motion? I don't know that there was, Your Honor. I just recall standing in front of the judge and asking for it. I mean, you're talking about this, like, informal discussion. But I mean, unless I'm missing something, I haven't seen any actual motion to have discovery on something that was denied. Well, we argued in the court that we needed discovery. We clearly requested that, and the court denied that. But, you know, there's a, their response was, we submitted these affidavits. Well, the presumption is there's a rebuttable. They kept talking about the ICC has already ruled on this issue. Well, the ICC had a rule on the issue, and certainly the defendants in the issue have a right to rebut the allegations that the author has made in good faith, or even whether they had the right to do what they were wanting to do. Well, the ICC order raises a rebuttable. A rebuttable. Rebuttable. That there was sufficient evidence to have a prima facie case for condemnation, correct? Yes, absolutely. It's rebuttable. And that's why we need discovery to rebut that presumption. And not only whether it's good faith, but whether, for example, they were wanting in their original easement, they were wanting to be able to abandon the pipeline on their property. They were wanting the right, and this is a huge issue, is the right to mortgage the easement. Now, they never asked for the right to abandon the pipeline on the property of these landowners. They never asked for the right to mortgage the easement, and then thus put a cloud in the tidal. And that was what we were wanting to see. We're not even conceding that you have the right to do what it is you're trying to do in the easement. So that was why discovery was needed on all of these issues. Is there anything in the record to show why there wasn't a specific motion, a particular actual motion made for a particular discovery? And to get a ruling from the court? We asked for it. She said no, and that's that. It's our position that we've done enough. We want the record to stand on itself. We get then to the issue of the trial. A couple things on this issue. Number one is we were denied. Now, as a part of their entire case, they cited the easement in the easement language. And the trial court had made a ruling that they had originally asked to be able to abandon the pipeline on the property. I think they probably knew that that could get into a big valuation problem, and they withdrew this. But they persisted in this right, and they wanted the ability to mortgage the easement. And they submitted the easement. That was into the evidence, and we wanted to cross-examine on that issue. What is the value of being able to mortgage the easement against that entire tract of property? And we were barred by the court in a motion to eliminate ruling from cross-examining that issue. Now, how can one submit into evidence the easement with all the language, yet we're not able to cross-examine on the value, cross-examine their experts, their people, on what is the value, what value did you attribute to mortgaging that easement? And we were handcuffed on that issue. We weren't allowed to cross-examine on the issue of whether evidence would be allowed to prohibit access to the property. The questions you wanted to inquire with regard to that cross-examination, were they matters that were relevant to the matters at issue? Sure. The value of the easement, that's really what we were trying, is what is the value of that easement that they were seeking? And we went into this in the trial court as to, well, what, the value of an easement that allowed a horse and buggy to cross the field one time in the spring and one time in the fall has a value, or the value of an easement that allowed 18-wheel trucks to cross the property 20 times a day had a different value. And we established that at trial. But what we really wanted to show is, is by giving Enbridge the right to mortgage the easement and forever put a cloud on that title, we had the right to put that in front of the jury to see what is the value of that. And we were handcuffed in that regard. With regards to denial of the landowner's testimony, I think the law is pretty clear. We've beat that horse pretty strongly in the past, in the prior case that we argued here, and in this particular case. The court barred the landowners from testifying. And among other reasons, there were three landowners involved in this particular case. There were two cases, but two tracts of property. One landowner owned one piece. Two landowners owned a second piece. The court barred that testimony from the landowners coming before the court and testifying as to what the value of the property would be. Now that goes way back. That decision that the landowner should have the ability to come in and opine in front of the jury what the value of their property is going to be, the value of the taking. And the court, too, based it on Mrs. Frye. Originally, when she had her deposition taken, we were still evaluating what it is that they were taking. They wanted to abandon the pipeline on the property. They wanted to be able to mortgage the easement. And we were establishing that, but during Mrs. Frye's deposition, she said I have no idea. Subsequently, after doing the research, we had hired experts to come in and say what would it cost to actually go in and dig that pipeline up later on. They dropped that abandonment issue, but she subsequently did issue an opinion. Now the other two landowners, Annabelle and Bernadette L'Amour, they didn't offer opinions. They did offer opinions, and they had opinions. In fact, Bernadette L'Amour was never even deposed. They never even took their deposition. So to bar Bernadette L'Amour based on something that Michelle Frye said at her deposition, which we later supplemented in a fashion that wasn't even opposed, is improper because the landowners should have the right to testify about their own property. And certainly Bowman and Bernadette L'Amour were not given that opportunity. Now, the court also barred the farmers, the farm tenants, the people that farm the property. The rule of law is pretty clear that anybody with knowledge on the property should be entitled to opine on the case. Now, that's interesting because that decision came after the jury had been discharged, and that came as a segue into the issue of the 2018 sanctions and the issue of the court dismissing the counterclaim. There was never prior disclosure about the farm tenants testifying or what they were going to testify about their competency on valuation. No, that's not right. Was there identification as potential trial witnesses of the farm tenants? Yes. I believe so, yes. It's cited in the brief. That was never an issue that was... They were specifically identified? Yes. As potential trial witnesses? Yes. The court just ruled they're not landowners, they're renters, so they don't get that special qualification. This is out of the transcript. They don't have any special exception with regards to the requirement that they be qualified as an expert. That's not my question. My question is, were they specifically identified as potential trial witnesses? Yes, I believe so, yes. I believe they were, Your Honor. I don't have my brief in front of me, but we can cite to the record. Now, they were supplemented. There were several supplementations on who was going to testify, and there were a variety of different landowners and farmers that had their depositions taken. If you may or may not recall, there were seven other landowner tracts that were involved. All those cases settled, but they took depositions of some of the farmers, not all of the farmers, but we'll quickly get into the issue of discharging the jury. Probably the most compelling thing about this case that shocked me was when the jury was discharged before we even started our case. That pretty much showed where this case was going. The court discharged, or the jury was allowed to be discharged on a Friday afternoon. It was requested to revere the expert, Mr. McCann. After that, the court barred Mr. McCann based on some argument that he hadn't been disclosed. I can get into that on the rebuttal, but the issue had never come up, not one time. You won't find any 213F requests in the record from Enbridge, but the court, to stop the trial, you had to get rid of all the witnesses, and that's what they did. The problem was the court discharged the jury before we even started our case, and that fundamentally is the biggest problem with this case. If you were willing to make a decision and give the case to Enbridge, at least don't discharge the jury until we present our case or until you make your ruling. Because when you discharge that jury and say, you're no longer needed, and then we start our case on Monday morning and I come in and say, where's the jury? And she said, no, stop. She didn't want to talk about that. I didn't technically discharge her. I said, well, where are they? Wait, stop. Now, just finishing up, there was a case in, I went to law school at the U of I in Champaign, and they had some law books from Russia where they printed up the decision before the trial was held. And the books were there for us to see, and the reason they were in the law library was because what a fiction, that what happens in Russia was we decide the decision, we put the books up before the trial is held. Discharging that jury before we even started our case was wrong, and that paints this whole process. And you say, well, does it show she was impartial? Well, it's the imperious, the impropriety that was the issue. Thank you, Your Honor. Thank you, Mr. Barrett. Good morning. May it please the court, counsel. I'd like to start with a couple of your questions, Justice Carter. Number one, you are not missing anything on the traverse. There is in this record no discovery issue that was brought in front of the court. There are no discovery requests that are brought in front of this trial judge. And in addition to that, the suggestion that the trial judge denied discovery and that I just heard what he said. He said she said no to discovery. I don't know how else to say it. That's false. That's not in the record. And frankly, I can't believe that we're here with those kind of statements. It's provably false. It's not in the record. That was never the trial judge's ruling. They had 90 days between the date they filed the traverse and the date it was heard. You will not find a subpoena for a deposition of our expert. You will not find a notice for his deposition. You will not find discovery requests in here. You will not find a 201K letter. You will not find any issue properly brought before the court. The other thing you won't find is 1,800 pages of evidence that we produced to them that was presented at the commission, that the commission relied on when it issued its ruling. That's not in the record. And we all know that under the rules, that creates a presumption. Their failure to put that in the record creates a presumption that this trial judge acted in accordance with the law and in accordance with the facts. The suggestion that this trial judge flatly denied discovery is false. What's also false is this statement that the tenants, the farm tenants, were disclosed. I challenge counsel when he gets up here in rebuttal. I challenge him in the next week, in the next month, to provide this court with a citation to the record where the farm tenants were specifically disclosed as value witnesses, and I submit to the court they were never disclosed as value witnesses. Their names do not appear in 213 responses. Their opinions of value were never disclosed in these cases. And with respect to the landowners and the farm tenants, Justice Carter, you pointed it out. We took their depositions. They said they had no knowledge of value. Look at the briefs that have been filed in this case. They claim that they couldn't consider the offers that were made in these cases because they had no knowledge of value. Seems to me to be flatly inconsistent with saying that they had knowledge of value that qualifies them to testify. This court issued its own decision relating to landowners, and that's the Midland Railway Company case where this court, the Third District Appellate Court, barred a landowner from testifying because he didn't have knowledge of value. Illinois courts have repeatedly acknowledged that where property is inherited like it was in both of these cases, the general rule allowing for testimony doesn't apply. Now, the landowners were fatally flogged regardless of that because they relied on spills and leaks and explosions, those possibilities. Now, the Will County case is a Rule 23 opinion. I was not prepared to discuss it here today because the rule is prohibited. So I'm not sure why we're here discussing the Will County decision. Frankly, it's very favorable to me in a lot of ways, but it's prohibited. So here's where we, and this is where I wanted to start in this case, actually. I want to start with this. There are several statements in the reply brief that I think need to be addressed, and they need to be addressed on this issue. There is an allegation here against this trial judge that she acted unethically, the code of judicial conduct. And the two cases that are cited by the defendants here are Bradshaw and Wheatley. Both of them dealt with improper ex parte communications. I will submit to the court first. The facts in this case have nothing to do with an ex parte communication. Bradshaw and Wheatley are factually completely different. But there's something more important. And the more important thing is that in 2011, the Ohio Supreme Court rejected, explicitly rejected those two cases. The Supreme Court found that those two cases do not establish a standard for, that's based on the appearance of impropriety, whereby litigants can assert the appearance of impropriety and substitute trial judges. I believe that this argument is absolutely frivolous. No reasonable lawyer would be in this appellate court making this argument. The Supreme Court specifically held that the judicial canons of ethics cannot be enforced by lawyers or litigants. The court says this, quote, the district code says nothing that would give the impression that its provisions could be used by a party or his lawyer. That case is never cited by the defendants here. It's never acknowledged by the defendants. The standard that's applicable is actual prejudice. And this is what I want to point out. In the reply brief at page one, the defendants admit, here's what they say. We are not alleging actual impropriety or bias. They admittedly cannot satisfy the applicable standard. That's not good faith to me. In their reply brief at page three, they say this appeal, quote, in no way deals with a motion for substitution of judge. That is factually offensive. Because the very motion that they filed in the trial court is called a, quote, motion for recusal or substitution of judge. That's found at record in ED4, page 634 to 636. It's exactly what they asked. In fact, the motion's basis is Rule 63c1 of the Code of Judicial Conduct, which is captioned disqualification. They wanted the trial judge disqualified. There also are no facts to establish that they had multiple witnesses to present on Monday morning, June 15th. And the reason they hadn't had any witnesses is because the landowners were found to be unqualified. They had also relied on improper elements barred by the Illinois Supreme Court and trunk line. And on Friday morning, their expert was barred. They had no witnesses left. They had no evidence left. That's what we were doing their Monday morning. I would say this. Equally without merit is this contention that the trial court erred in barring their expert. Written requests for the most critical evidence in an eminent domain case, comparable sales. We made written requests for comparable sales. I sent 201K letters on February 24th, 2015. I sent another 201K letter on March 12th of 2015, I'm sorry, for the work file of their expert. And on June 12th, when we've audited their expert, the court actually asked them this question. She said, the question is, did you in your disclosure identify the comparable sales you used? In the 7,000 pages, is there a piece of paper that identifies what sales you used for both comparable sales and paired sales? This is the expert's answer. At trial, quote, there's not a single document that identifies the sales I specifically used. He then says that his work file was never requested. He says, I don't think I provided my Kankakee file to anyone because no one ever asked for it. Shortly after that, during the same proceeding, counsel stands up and says to the trial judge, the comparable sales are in the work file. I'm standing here today. I have never seen the comparable sales. They've never been produced. They're not in the record. In fact, I'll tell you this. In the 7,000 pages that they produced, allegedly his file, there's not a single sale in those 7,000 pages from Kankakee County. In the face of all that, they verify an offer of proof on Monday, June 15th. Verify under penalties of perjury and repeatedly say the sales are in the file. Penalties of perjury. In that same offer of proof, they say that the work file was never requested. Count them all record. ED2, page 4372. I urge you to look at this. It's a specific discovery request for the, quote, work file, end quote. Not only did I send them a request for it, on March 12th of 2015, I begged them for it in 201K, pursuant to Rule 201K. It's in the record. They got a verified offer of proof saying that it was never requested. I don't know how else to tell you this. It's false. It's just false. What has happened in these cases is that somehow the landowners got to trial in an eminent domain case. And they didn't have any comparable sales. I don't know how that's possible, especially in this case, because we started this trial in the middle of June, say June 12th. On May 15th, in Livingston County, in another pipeline contamination case, the same expert was barred by Judge Fellheimer. For what? In part, because he came up with his sales, comparable sales, the night before he was going to testify. And Judge Fellheimer says, that smells fishy. Those are his words, not mine. Then in June, on June 1st, we're in DeWitt County trying another case. And Judge Finson in DeWitt County bars McCann. Why? Because he didn't produce any comparable sales. Judge Finson said that 7,000-page file is of no use at all. The burden, clearly under the rule, is on the proponent of the witness to produce this kind of information. It was never done. There is no way that they can satisfy an abusive discretion standard in this case on the barring of McCann, and here's why. Abusive discretion, regularly defined as no reasonable person, could find the way the trial judge did. They can't prove that here. Because Judge Fellheimer barred McCann, in part for not using his sales. Judge Finson barred McCann for not producing his sales. And in Kankakee County, they got what they asked for. Judge Albrecht had an emergency, she recused herself from the case. What that resulted in was two trial judges making findings. That McCann was properly barred. Two trial judges in Kankakee County found that these defendants engaged in deception. Judge Albrecht said, this was almost deliberate, your withholding of this information. They were right. It was almost deliberate. And I don't think anyone could ever explain to us how, in the face of two trial judges barring McCann, leading up to the Kankakee County trial, there wasn't some request for additional time to produce the comparable sales. It's inexplicable that we are here today, in an eminent domain case, and the defendants have never shown where their comparable sales are. Maybe when counsel gets up today for the first time, he'll point to all of us where the sales are in the record. I don't think they're there. And neither did their own expert. I think that the court will find that on the remaining issues, obviously we don't have time to cover all of these here today, I think the court will find that each of these issues that they've raised has either been waived, has no good faith basis in fact, and also is not well founded on existing law, or any even suggestion about why existing law should be modified. I think the court will find that this particular appeal is purely frivolous. I would ask that this court affirm the decisions of Judge Albrecht, affirm the decisions of Judge Birx in this case, and I thank you for your time this morning. Thank you. Vera. You need only look to Capelli-Embridge's brief at page 21, where at the top of the page they say, Subsequently on January 7, 2015, defendants served supplemental 213 F3 disclosures of Mike McCann and the work file. Now, that was hand-delivered to their office, 7,000 pages. And the reason, including comparable sales, including paired sales analysis, and it's on the record, it's in this record. Now, 7,000 pages, and one thing that Enbridge has, they have the best attorneys that money can buy. And we thought, you know, if I don't give them every sheet, every single sheet of paper, they're going to argue that we held something back. So 7,000 pages was hand-delivered. And then, How many sale transactions were identified? Well over 100. Well over 100. In this case? In this case. Now, they came back and they said, We don't understand this. Which cases? Now, they did not choose to depose the expert. They didn't depose him. And you find in the record, there are highlights, there are special areas that are, we gave cases from Edgar County, from Livingston County. It's all in this 7,000-page document. And then, they do come back right after this, February 24th, that's on page 21, Your answers, you fail to provide an explanation or analysis regarding the comparable sales. I.e., if it's in that file, and I call them up, all you've got to do is take their, if you want to understand what those comparable sales is or you want an analysis, just take his deposition. Because it's all in there. So, those documents are all there. And it's in their brief. Now, this is a discovery issue. So, if they think that there's something wrong with that, and they think we haven't properly did something, then they're burdened. If they send this 201-K letter, and when I get it, I call them up. If they want to pursue that, and they say, Well, we don't think you've provided proper discovery, then motion it up. Give your motion to the court and let the court rule on it. But they sat on it. They sat on it the whole time. The whole time. And we get to the day of, the day one of what your, McCann, before we even start the case, and they say, No, no, we don't know what this is. Well, the answer is, they never took his deposition. And it's all in that document. And it's all in this file. And it's here. And so, for them to say, Well, we didn't give you the whole file. It's in your own brief. This is... Just to be simple. Comparable sales are in that 7,000. Absolutely. Absolutely. If I had it memorized, I could point to the actual pages. But they're in there. There's a pair of CDs. They're supposed to point to a few pages. Well... Or where they are. They're Livingston County. They're labeled at the top of that. Livingston County. Edgar County. I could do it. I can't do it now. I mean, I could go back and look where they are. And then I could, given the day, I could cite to the actual pages of the 7,000 pages. I can't do it right now. But if the report would allow me, I could point to the actual pages. But these hundreds of comparables that you referred to earlier, they're actually in all of those cases. Yes. And the reason... Not this one. What's that? Are they in this one as well? Yes. Yeah. They're in this one. How many do you have? Hundreds. In this case? They're over a hundred. They're your two plaintiffs, your three plaintiffs. They're over a hundred. They're over a hundred in that file. Referring to... For this particular case. They're the Kankakee property. Well, they're not Kankakee. It's not only Kankakee because there aren't any sales. There's not one single, even their own experts say, there aren't sales of easements like this. They don't occur. So we went to Edgar County. We went to Livingston County. We had to go all over because there has never been, not ever, a sale of an easement or an evaluation of an easement of the type that they wanted in this case in Kankakee County because it was a unique request. They wanted to abandon the pipeline. They wanted to... So you're saying there are, you will find comparable sales of similarly situated properties in adjoining or adjacent counties with the same terms and conditions of offer for an easement. Is that correct? Similar, yes, absolutely. I can't say they're exactly the same terms. Similar terms. Yeah. Livingston County. If you would please, the court, I would, when I get home, I will send the letter back up here addressing the actual pages so the court doesn't have to go through 7,000 pages. And we did that because we ran, I think at the time, nine counties. And here, here's his opinions on all of these issues, and this is what we wanted to have. Now, there were, you'll find some, you're not going to find that the Kankakee issue came up because subsequently to our handing the file over with all of those things, he even found additional Kankakee cases, but those were not in that original file because he hadn't completed everything, but all of the other cases were on there. Counsel, you have one minute. So it is. When you say cases. Why? Sales. Sales. So you'll find something very simple. Yes. Property A. Yes. Sold for easement. Yes. Whatever. Yeah. Hundreds. I think, I believe it's closer to 100 cases. And it's all on that disk. And their problem at page 21 and 20 is we don't understand that. We don't understand all these. Then take his deposition. But you can't sit back, do nothing, not take his deposition, and then say we don't understand it. You can't not motion up a discovery issue and say, oh, well, they're not explaining this to us, and wait until the day of trial, and then try to bar a discovery deposition. The objection was more than an explanation. I mean, they stated these answers, your 213F3 disclosures and work file of Mr. McCann, which you have produced, failed to provide any explanation, analysis, or specificity regarding comparable sales or highest and best use. We hereby request that you provide full and complete answers to the foregoing document request relating to comparable sales. You never responded to that. No, that's not true, your Honor. I picked the telephone up the day I got that, and I said, the highest and best use is in the original disclosures. It's all in the record. The highest and best use was agricultural, and that had all been disclosed. Just because they write something on a sheet of paper doesn't mean that that's true. But absolutely, I picked the telephone up, If you want to go into an in-depth request or discussion about all the data that's on that file, just notice him up for that. Ask him. And that, they never did. And they sat on it, and they sat on it. And really, this is a discovery issue. It's a discovery dispute which they chose, and we cite the Contrar case, where they waited until the day of trial, and then barred. And if we get rid of McCann, and we get rid of the landowners, and we get rid of the tenants, case over. Why do you think all that stuff got barred? Because I don't think the trial judge wanted to deal with this. They had, it didn't make any sense to me. If she was going to do that, we argued that allowing McCann, because I smelled it. I smelled what was going to happen. And that smell was really strong when I learned that the jury had been discharged before we even started our case. But I said, don't go through all this. I smelled she was just going to do what she did. Then let's not waste time picking a jury and doing all this stuff. Let's just bar McCann, bar everybody. No reason to go through this facade. And there wasn't. Thank you. Thank you both for your arguments today. We'll get back to you within a short day with a written disposition. Thank you so much for looking. Thank you.